# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>Heriberto Perez, also known as Alexis Santana Cruz<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:22MJ 503<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  11/02/2022  in the county of  Forsyth  in the  Middle  District of  North Carolina , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

/S/ RUSSELL JOHNSON
*Complainant's signature*

Russell Johnson, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 12/13/22

*Judge's signature*

City and state:  Greensboro, North Carolina

L. Patrick Auld, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT RUSSELL JOHNSON IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Russell Johnson, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, state as follows:

## AFFIANT'S EXPERIENCE

1. I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearms and narcotics related crimes, including, but not limited to, visual surveillance, witness interviews, the use of search warrants, confidential informants, undercover agents, pen registers/trap and trace devices, and mobile tracking devices. Based upon information gained through this investigation and others pertaining to firearm trafficking activities of the participant in this investigation, I am familiar with the ways firearm traffickers conduct their business. My familiarity includes the various means and methods by which firearm traffickers acquire and distribute their firearms, their use of cellular telephones, and their use of vehicles in furtherance of firearms trafficking and money transactions.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of an application for a criminal complaint for Heriberto Perez.

4. I have probable cause to believe that Perez did Distribute a Controlled Substance, 21 U.S.C. § 841(a)(1).

## THE INVESTIGATION – FACTUAL BACKGROUND

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause of violation of federal criminal offense, specifically 21 U.S.C. § 841(a)(1).

## PROBABLE CAUSE

6. On or about early October 2022, an ATF Confidential Informant[1] (hereinafter, CI) met an individual, hereinafter Subject 1 ("S1"), who allegedly sold Fentanyl pills. From on or about October 4, 2022, to on or about October 17, 2022, ATF conducted three (3) undercover purchases of Fentanyl pills from S1 and Subject 2 ("S2"). During the interaction with S1, he expressed that his source of supply (hereinafter, SOS) was a Puerto Rican male. Also, during the

---

[1] The CI was compensated by ATF for his/her services and has a history of criminal convictions including at least one felony conviction.

interactions, an ATF Special Agent (hereinafter, UC), acting in an undercover capacity, and the CI expressed to S1 that they had acquired a large amount of cases of cigarettes.

7. S1 informed UC and the CI that his Puerto Rican SOS had a desire to acquire the cigarettes and would trade raw Fentanyl for the cigarettes. On October 17, 2022, during an undercover purchase of Fentanyl pills from S1, S1 FaceTimed an individual later identified as Perez. Perez was initially identified as Alexis Santana-Cruz based on a fraudulent identification card that Perez used during the investigation. S1 allowed UC and the CI to speak to Perez on FaceTime. Perez asked UC how many cigarettes he could purchase from UC for $35,000, to which UC informed Perez he would discuss amounts on a later date.

8. On October 28, 2022, UC met with S2, which had S1 on the phone. UC explained to S1 that he wanted to trade his $35,000 worth of cigarettes for a kilogram of Fentanyl. S1 acknowledged and they agreed to the terms of the future transaction. From this date to November 1, 2022, UC communicated directly with Perez to finalize the transaction. Perez informed UC that he would be in North Carolina on November 1, 2022 and wanted to meet UC, to which UC agreed.

9. On November 1, 2022, S1, who stated he was picking Perez up at the airport, instructed UC to meet them at 7340 West Friendly Avenue,

3

Greensboro, North Carolina. UC went to the meet location with the CI. Once they arrived, the CI went inside the business and met with S1. UC met with Perez in the parking lot. Perez provided UC with a small sample of purported Fentanyl. Perez informed UC that the kilogram of Fentanyl had been waiting for him for a few days. UC and Perez confirmed that they would conduct a transaction involving eighteen (18) cases of Newport cigarettes and in return Perez would provide UC with the kilogram of Fentanyl.

10. This transaction was audio/video recorded. ATF conducted a field-test of the Fentanyl, which yielded a positive result. The fentanyl was sent to the Drug Enforcement Administration (DEA) laboratory for analysis and the results showed a weight of 56.4 grams of N-Phenyl-N-(2-phenylethyl)-4-piperidinyl]propenamide (Fentanyl).

11. On November 2, 2022, Perez instructed UC to pick him up at S2's apartment, vicinity of 1325 North Main Street, Winston-Salem, North Carolina. When UC arrived, Perez and another subject (hereinafter "S3") entered the undercover vehicle (hereinafter, UCV). UC drove Perez and S3 to 425 Monmouth Street, Winston-Salem, North Carolina, where another ATF Special Agent (hereinafter, UC2), acting in an undercover capacity, was waiting with the cigarettes. Once they arrived, UC showed Perez the cigarettes. Perez made multiple phone calls to an associate and discussed pricing and asked UC several questions about pricing on the cigarettes.

4

12. Perez and UC2 then entered the office of the storage unit, which rented U-Haul trucks. Perez utilized an identification card in the name of Alexis Santana-Cruz to rent a box truck. Once the truck had been rented, Perez drove the truck to the back of the property where they had originally met and where the cigarettes were stored.

13. Perez then directed UC to drive he and S3 back to S2's apartment. Once they arrived, S3 and Perez exited and went inside S2's apartment. A few minutes later, Perez returned to the UCV carrying a blue bag and handed it to the UC. Perez informed UC that the Fentanyl weighed less than a kilogram and that he would make it up to the UC during a future transaction. After UC2 loaded the cigarettes in Perez's U-Haul, Perez departed the location with the cigarettes.

14. The transaction was audio/video recorded. ATF conducted a field-test of the Fentanyl, which yielded a positive result and weighed approximately 866 grams. The fentanyl was sent to the Drug Enforcement Administration (DEA) laboratory for analysis and the results showed a weight of 839.8 grams of N-Phenyl-N-(2-phenylethyl)-4-piperidinyl]propenamide (Fentanyl).

15. On December 12, 2022, I interacted with Perez after placing him under arrest, based upon probable cause, and he indicated his true name is Heriberto Perez. During Perez's arrest, he was in the company of his daughter

5

and one (1) year old grandchild. Perez's daughter indicated that his true name was Heriberto Perez. I then asked Perez if that was his name and he answered in the affirmative. During a post-arrest, Mirandized interview of Perez, he admitted to possessing 100 grams of fentanyl and mixing the fentanyl with other substances to make the kilogram that he provided to UC1 just prior to his arrest. Following the interview, I queried Perez through the National Crime Index Center and observed a state of Massachusetts identification card with Perez's picture and a criminal history that matched what Perez claimed during the interview.

## CONCLUSION

16. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on November 2, 2022, within the Middle District of North Carolina, Heriberto Perez committed the following

criminal offense: Distribution of a Controlled Substance, Fentanyl, 21 U.S.C. § 841(a)(1).

/S/ RUSSELL JOHNSON
Russell Johnson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Dated: December 13, 2022

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

7